605 So.2d 1349 (1992)
In re MEDICAL REVIEW PANEL OF the CLAIM OF Connie ENGLERT, Individually and on Behalf of her Minor Child, Kortnei Kent.
No. 92-C-0580.
Supreme Court of Louisiana.
October 19, 1992.
Opinion Concurring in Part, Dissenting in Part October 22, 1992.
James Burnett Aime, New Orleans, for applicant.
Stephen M. Pizzo, Blue, Williams & Buckley, Metairie, for respondent.
Opinion of Justice Dennis Concurring in Part, Dissenting in Part October 22, 1992.
HALL, Justice.
In this malpractice action brought by Connie Englert, individually and on behalf of her minor child, Kortnei, against Dr. Byung Moon Chin, the trial court, after a bench trial, found that the defendant doctor breached the applicable standard of care in failing to earlier diagnose a tumor in the child's head, and awarded damages totalling $225,000. On defendant's appeal, the court of appeal in an unpublished opinion affirmed the finding of liability, 592 So.2d 515 (1992) but reduced the amount of damages to $10,000, concluding that the only adverse effect of the failure to diagnose the tumor six months earlier was continued headaches and vomiting for the six-month period and perhaps some mental anguish. One judge dissented from the finding of liability.
Plaintiff's writ application was granted to consider whether the substantial reduction in the amount of damages was warranted. 596 So.2d 541 (La.1992). We amend the court of appeal judgment to increase the award to $50,000.
Plaintiff urges that the evidence supports a finding that the child was taken to the doctor with complaints of headaches more than a year and a half prior to the time that he referred her to a specialist and the tumor was diagnosed. Plaintiff further argues that the evidence supports a finding that had surgery to remove the tumor been done sooner, the entire tumor could have been removed and the risk of future recurrence would have been reduced, thereby justifying the damage award made by the trial court.
Defendant, in support of the reduction in the award made by the court of appeal, first reurges its argument made in the courts below that plaintiff failed to establish liability because she failed to establish by expert testimony the appropriate standard of care and a breach thereof. More directly to the issue of quantum, defendant argues that $10,000 adequately compensates the child for the minimal damages occasioned by a not more than six-month delay in diagnosis and surgery.
The court of appeal correctly summarized the facts and resolved the liability issue as follows:
"In February 1986, when Kortnei was seven years of age, plaintiff took her to Dr. Chin, her pediatrician, with the complaint of headaches over a long period of time. He ordered a CAT scan which revealed a brain tumor. On February 7, surgery was performed and the tumor *1350 was removed except for a portion of it which was located on the brain stem. The tumor was benign and was described as a very slow growing tumor which took years to develop before causing symptoms. The possibility exists that the portion of the tumor at the brain stem will grow in the future, but there was no indication of growth at the time of the trial in August, 1990.
"Kortnei had been the primary patient of Dr. Lorch, with whom Dr. Chin was associated, but early in 1985 Dr. Lorch retired and Dr. Chin became Kortnei's physician. According to plaintiff, Kortnei's headaches started in October 1984, became more frequent in January or February 1985 and were `a few headaches a week' by December 1985; and the child started vomiting with the headaches sometime before February 1986. She, testified that she regularly reported all of this to Dr. Chin. While she was somewhat vague as to exactly when she told Dr. Chin about the increase in the severity and frequency of the headaches and the onset of the vomiting, a fair evaluation of the testimony is that she told him about the situation no more than six months before he ordered a CAT scan. "Plaintiff's testimony was flatly contradicted by Dr. Chin's. He said he was never told about these headaches until February 1986. He said if she had complained it would have been recorded in his records. The trial court resolved the conflict in favor of plaintiff and we are bound by this resolution for appellate purposes.
"All of the members of the medical panel who rejected plaintiff's claim based their opinions of no breach of the standard of care on the assumption that there was no complaint of headaches until February, 1986. However, when Dr. Sterne, one of these experts, was asked whether his opinions as to standard of care would change if Dr. Chin had been given in June 1985 the information he got in February 1986 he stated:
`If he were told she is having headaches once a month or she was having headaches once a month and now they are getting much more frequent and much more severe and now she is vomiting with them, then, I would find a breach in the standard of care.'
"Even Dr. Chin recognized the necessity of ordering the CAT scan once he knew about the severity and frequency of the headaches. His defense was that he wasn't told about it until February 1986, a defense rejected by the trial court. Under these circumstances there was no dispute about the standard of care and no necessity for plaintiff to call an expert. There was only a dispute as to the facts which would establish the breach if they were resolved in plaintiff's favor. For purposes of appellate review, Dr. Chin's argument as to liability fails."
The court of appeal based its reduction in the amount of damages on the following findings:
"Dr. Chin's arguments as to quantum are meritorious. The trial court committed manifest error and abused its discretion in the amount of the award. This was a slow growing tumor which took several years to reach the size of a lemon or golf ball as it was in February 1986. It could not be diagnosed without a CAT scan and the applicable standards of care for a pediatrician did not dictate or even suggest the need or appropriateness of a CAT scan until the child's headaches had reached a certain level of severity and frequency. This didn't happen until about six months before the surgery at the longest. If Dr. Chin had properly ordered the CAT scan at that time the surgery would have taken place about six months sooner, but that surgery and all follow-up would have been the same as it was. Nothing in the record even suggests that Kortnei's condition was aggravated in any way by the delay in diagnosis which is the only fault attributable to Dr. Chin.
"The only damages sustained by the child as a result of the tardy diagnosis were a six month period of headaches and some vomiting and perhaps some mental anguish for not knowing the nature of the problem six months sooner.

*1351 An award of $10,000 is the most that could be awarded in the range of discretion."
In awarding $100,000 for pain and suffering, $100,000 for physical and mental disability, and $25,000 for future medical expenses, the trial court found that Dr. Chin's unreasonable delay in diagnosing the tumor allowed it to grow for another year, worsening her injury, the damage to her brain, and her prognosis. The evidence does not support that finding or the awards made by the trial court. Accepting the mother's testimony about the complaints to Dr. Chin, the frequency of the headaches accompanied by vomiting was not sufficient under the standard of care enunciated by Dr. Sterne to suggest a CAT scan until six months or less before the tumor was finally diagnosed and surgery performed. There is no medical evidence that the six-month delay worsened the child's condition or prognosis. Dr. Nadell testified that the child was more at risk than she would have been if, at the time of surgery, the tumor had been smaller and not into the brain stem, and if he had been able to get it all. But he did not tie this statement into any particular time frame or testify that the delay in diagnosis and surgery to remove the tumor, which had been growing for several years, prevented the removal of all of the tumor or worsened the prognosis.
Dr. Nadell's testimony did establish that the part, if any, that he was unable to remove because of its proximity to the brain stem was the youngest part or most recent growth of the tumor. He also said he could not tell when the part which may have been left in grew to that location. Tests conducted during the four years postsurgery show no evidence of the tumor or recurrence. There is a paucity of medical evidence linking the child's poor performance in school to the delay in diagnosis or to the residual part of the tumor which was not removed. Any present disability the child has was not proved to have been caused by the delay in diagnosis.
Nevertheless, it stands to reason that the new and additional growth of the tumor during the six-month period which necessarily forms part of the residual which could not be removed, increased the risk of future recurrence to some extent. The reduction in the amount of the award by the court of appeal does not take into account this element of damage. We also conclude that the severity of the pain and suffering endured by the child during the six-month period was somewhat understated by the court of appeal.
Thus we believe that the child is entitled to be compensated not only for the pain and suffering she endured during the six-month period, but also for the increased risk, although perhaps somewhat minimal, and its accompanying mental anxiety resulting from the delay in diagnosis and surgery.
Considering these factors, we find that the award for pain, suffering and disability should not have been reduced beyond $50,000, the highest amount within the range of discretion of the trier of fact.
The court of appeal correctly deleted the trial court award of $25,000 for future medical expenses. Dr. Nadell testified no future treatment was indicated. The child will need yearly check-ups which would have been necessary after this type of surgery regardless of when it was performed.
For the reasons assigned, the court of appeal judgment is amended to increase the award from $10,000 to $50,000, and as amended is affirmed.
AMENDED and AFFIRMED AS AMENDED.
LEMMON, J., concurs.
DENNIS, J., concurs in part and dissents in part.
*1352 DENNIS, Justice, concurring in part, dissenting in part.
In view of the fact that the medical malpractice resulted in the child's worsened condition, the greater difficulty in removal of the tumor, and the child's more gloomy prognosis, I cannot agree that the trial court abused its discretion in assessing damages to the extent found by the majority.